318 S.E.2d 616

**Jack M. JOHNSON**

v.

**STATE of West Virginia DEPARTMENT OF MOTOR VEHICLES, et al.**

**No. 15915.**

Supreme Court of Appeals of West Virginia.

June 26, 1984.

---

Spilman, Thomas, Barrle & Klostermeyer, Charleston, for appellant.

H. Bradley Russell, Asst. Atty. Gen., Charleston, for appellees.

PER CURIAM:

This appeal is brought by the West Virginia Department of Motor Vehicles and its Commissioner, Virginia L. Roberts, from a final order of the Circuit Court of Kanawha County, entered January 6, 1983. The circuit reversed and vacated the Commission's order suspending the driver's license of the appellee, Jack M. Johnson. The Commissioner contends that the circuit court exceeded its authority to review contested cases under the West Virginia Administrative Procedure Act, W.Va.Code § 29A–5–4 (1980 Replacement Vol.), and that the order of reversal is, therefore, clearly wrong. We agree and we reverse the judgment of the circuit court.

At approximately 1:30 a.m. on November 13, 1981, Trooper R.L. Seacrist and Trooper R.G. Blevins of the West Virginia Department of Public Safety observed a motor vehicle traveling eastward on Interstate 64 in Kanawha County veer across four lanes of traffic in a manner which suggested loss of control of the vehicle. After the vehicle came to a stop on the berm of an access ramp, the officers approached and asked the appellee, who was seated on the driver's side of the vehicle, to get out. At that time Trooper Seacrist detected a strong odor of alcohol and observed that the appellee was swaying and holding onto the vehicle for support. Trooper Seacrist then asked the appellee to walk a straight line and subsequently arrested him on a charge of driving while under the influence of alcohol. A passenger in the vehicle was also arrested, and both she and the appellee were taken to the South Charleston State Police Detachment.

At the detachment offices, the appellee was given a breathalyzer test, the results of which indicated an alcoholic concentration in his blood of eighteen hundredths of one percent (.18) by weight. Trooper Seacrist, as the arresting officer, completed an affidavit reciting the details of the appellee's arrest, as required by W.Va.Code § 17C–5A–1(b) [1981],[1] and mailed it, along with the results of the breath analysis, to the West Virginia Department of Motor Vehicles (hereinafter, the Department).

By letter dated November 28, 1982, the Department notified the appellee of the temporary suspension of his license to operate a motor vehicle on the ground that "[y]ou drove a motor vehicle in this state while having an alcoholic concentration in your blood of ten hundredths of one percent (.10) or more by weight." The appellee filed a timely request for a hearing and was permitted to retain his driver's license pending the outcome.

On March 16, 1982, a hearing examiner for the Department conducted a hearing at which Trooper Seacrist, Trooper Blevins,

---

1. The Commissioner's authority to suspend the appellee's driver's license in this case was controlled by amendments to Chapter 17C which became effective prior to the appellee's arrest. 1981 W.Va. Acts ch. 159. Some of the relevant provisions of Chapter 17C were amended after the entry of the circuit court's order. 1983 W.Va. Acts ch. 138. Except as otherwise indicated, all citations to Chapter 17C in this opinion refer to the 1981 statute.

the appellee and the passenger in the vehicle testified. On August 16, 1982, the Commissioner entered a final order suspending the appellee's driver's license for a period of six months, subject to reinstatement after thirty days upon successful completion of the Department's safety and treatment program.

■ The appellee appealed the Commissioner's order to the Circuit Court of Kanawha County pursuant to the provisions of W.Va.Code § 29A–5–4, and obtained a stay of enforcement of the license suspension. By order entered January 6, 1983, the circuit court reversed and vacated the Commissioner's order. The court made no findings of fact or conclusions of law, but adopted and incorporated by reference the facts and legal arguments contained in the appellee's memorandum of law.[2] It is from this order that the Department and the Commissioner now appeal.

The issue raised on appeal is whether the circuit court exceeded its statutory authority to review the decisions of administrative agencies under the West Virginia Administrative Procedure Act. The scope of judicial review of administrative adjudications in contested cases is controlled by W.Va. Code § 29A–5–4, which provides, in pertinent part:

> (g) The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or

> (3) Made upon unlawful procedures; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
>
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

■ This provision clearly predicates the circuit court's authority to reverse an administrative order upon a showing, by the party seeking review, of prejudice to his substantial rights as a result of one or more of the statutorily enumerated grounds. Absent such a showing, the reviewing court has no statutory authority to reverse an order or decision of an administrative agency in a contested case. *Shepherdstown Volunteer Fire Dept. v. West Virginia Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d 342 (1983).

The first assignment of error presented to the circuit court was that the Commissioner acted in excess of her statutory authority in ordering two continuances of the license suspension hearing. The record shows that the hearing was originally set for December 23, 1981, but that the appellee was twice notified by the Department that the matter had been postponed "due to circumstances beyond our control." In all there was a lapse of approximately four months between the original hearing date and the day the hearing was in fact conducted.

W.Va.Code § 17C–5A–2(b) provides that a license suspension hearing "shall be held within twenty days after the date upon which the commissioner received the timely written request therefor, unless there is a postponement or continuance. The Com-

---

**2.** We note that the circuit court's wholesale adoption of the appellee's somewhat rambling memorandum of law in lieu of an independent determination of the facts and law in this case does not satisfy the mandatory requirement of Rule 52(a) of the West Virginia Rules of Civil Procedure that a trial court hearing a case without a jury state upon the record its findings of fact and conclusions of law. *See South Side Lumber Co. v. Stone Construction Co.*, 151 W.Va.

439, 152 S.E.2d 721 (1967). The trial court's failure to comply with Rule 52(a), which is applicable to judicial review of administrative decisions, *Golden v. Board of Education*, 169 W.Va. 63, 285 S.E.2d 665 (1981), constitutes neglect of duty. *People's Bank of Point Pleasant v. Pied Piper Retreat, Inc.*, 158 W.Va. 170, 209 S.E.2d 573 (1974); *Commonwealth Tire Co. v. Tri-State Tire Co.*, 156 W.Va. 351, 193 S.E.2d 544 (1972).

missioner may postpone or continue any hearing on his own motion, or upon application for each person for good cause shown." The appellee contends that this provision requires the Commissioner to make a showing of good cause as a precondition of asserting her statutory authority to order a continuance of a license suspension hearing, a requirement that was not satisfied by the Commissioner's statement of reasons in this case. The Commissioner contends that the "good cause" provision is not applicable to her and that she is not required to articulate on the record any reason for her decision to order a continuance.

 We need not resolve this conflict in statutory interpretation for two reasons. First, there is no evidence of record which indicates that the appellee voiced any objection to the continuances ordered. In *State v. Scritchfield,* 167 W.Va. 683, 280 S.E.2d 315, 322 (1981), this Court held that any error associated with a delay in a final child custody hearing was waived by the parent's failure to object to continuances granted. Similarly, in Syllabus Point 2 of *Kanawha Valley Transportation Co. v. Public Service Comm'n,* 159 W.Va. 88, 219 S.E.2d 332 (1975), this Court stated, "The mere delay in the disposition or decision of a case does not vitiate the order or judgment. If a decision is unduly delayed, a proceeding in mandamus may be instituted to compel a decision but not how to decide." In the present action, the appellee neither objected to the continuances ordered nor attempted to hasten the proceedings through mandamus or otherwise.

 Second, there has been no showing of prejudice which would warrant reversal of the Commissioner's order. As we have already noted, absent a showing of prejudice to the substantial rights of the petitioner for review, a circuit court has no authority under W.Va.Code § 29A–5–4(g) to reverse an agency decision in a contested case. *Shepherdstown Volunteer Fire Dept. v. West Virginia Human Rights Comm'n, supra.* There has been no such showing in this case. The delay, in and of itself, was not of sufficient duration to constitute a denial of due process. In addition, the appellee retained his driver's license throughout the proceedings below. In this respect, the delay operated to the appellee's advantage. Consequently, we conclude that the circuit court was without authority to reverse the license suspension order on this ground.

The appellee's second assignment of error below was that the Commissioner's order was made upon unlawful procedures. He asserts that the affidavit of the arresting officer upon which the Commissioner's actions were predicated was fatally defective. Consequently, he argues, all subsequent proceedings had in the case were void.

W.Va.Code § 17C–5A–1(b) provides that upon the arrest of a person for a violation of W.Va.Code § 17C–5–2, the arresting officer

> shall report to the commissioner ... by sworn, written statement within twenty-four hours the name and address of the person so arrested. Such report shall include the specific offense with which the person is charged, and, if applicable, a copy of the results of any secondary tests of blood, breath or urine. The law-enforcement officer shall certify that such tests were administered in accordance with the provisions of article five of this chapter, and that he believes the results to be correct.

The purpose of the arresting officer's report is to provide a basis for the Commissioner's initial determination to institute license suspension proceedings. W.Va.Code § 17C–5A–1(c).

The arresting officer's sworn statement in this case contained all the information required by the statute. The jurat, however, indicated that the affidavit had been sworn to before the notary at 9:00 p.m. on the day of the arrest. This conflicted with the "Certificate of Service," immediately following the jurat, in which the arresting officer certified that the affidavit had been mailed some four hours earlier. The only explanation offered for this discrepancy at the hearing was innocent mistake on the part of the notary in indicating the time.

■ The appellee asserts that the regularity of the jurat must be presumed and that as a consequence the arresting officer's certificate of service must be held invalid. Even assuming this proposition to be true,[3] we do not see how the defect affects the affidavit. The certificate of service is no part of the affidavit and has no bearing on the matters stated therein. Its sole purpose is to show compliance by the arresting officer with the twenty-four hour mailing requirement of W.Va.Code § 17C–5A–1(b). There is no contention that the affidavit was not in fact mailed within the twenty-four hours following the appellee's arrest. Therefore, the error in the certificate of service must be deemed harmless.

■ The arresting officer's affidavit substantially met all the requirements of the statute. It contained all the information necessary to enable the Commissioner to make her determination of whether to institute license revocation proceedings, and there is no dispute that the affidavit was properly sworn to, as shown on the face of the jurat. Since there is no allegation or proof of bad faith or fraud on the part of either the affiant or the notary, we must conclude that the discrepancy noted by the appellee is the result of an innocent mistake or clerical error which does not defeat the validity of the sworn statement. Accordingly there is no basis for reversal of the Commissioner's order on the ground that it was made upon unlawful procedures.

■ The appellee also asserted in his memorandum of law that the affidavit was fatally defective in that the report of the breath analysis results listed the arresting officer as the person who conducted the test. The appellee does not specify how this constitutes a defect in the affidavit. Instead his argument goes to the admissibility of the test results as evidence in the administrative hearing, an issue which is discussed *infra*. In any event, it appears

that the report of the test results, like the officer's certificate of service, was not a part of the sworn statement, but, rather, was merely an exhibit appended thereto. Consequently, any error therein cannot be said to affect the integrity of the affidavit.

The appellee's final assignment of error on review in the circuit court related to the admissibility of the evidence of the results of the breathalyzer test administered after his arrest. The appellant challenged the introduction of this evidence on the ground that the State made no showing that the sobriety test was properly conducted.

■ The record shows, however, that the appellee made no objection to the introduction of the test results at the administrative hearing. As a general rule, nonjurisdictional issues not objected to at trial are deemed waived and may not be raised for the first time on appeal. *Wheeling Dollar Savings and Trust v. Leedy,* 158 W.Va. 926, 216 S.E.2d 560 (1975); *State Road Commission v. Ferguson,* 148 W.Va. 742, 137 S.E.2d 206 (1964). This rule has been applied to bar consideration of errors relating to the erroneous admission of evidence for the first time on judicial review of administrative proceedings. In *Evans v. State Compensation Director,* 150 W.Va. 161, 144 S.E.2d 663 (1965), we stated at Syllabus Point 1:

Ordinarily, an objection to any incompetent, improper, or hearsay evidence should have been made at a trial or hearing before the admission of any such evidence can be later urged as error on appeal.

*See also Butler's Discount Auto Sales v. Roberts,* 172 W.Va. 83, 303 S.E.2d 722 (1983).

■ Although we recognize that the informal nature of administrative hearings may require, in certain circumstances, relaxation of procedural rules, we do not believe that exception is warranted in this case. The failure of the appellee, the only party represented by counsel in the proceeding below, to object to the admissibility

---

**3.** There is some indication in our case law that the validity of a jurat may be impeached or supported by outside testimony. *See, e.g., Richardson v. Ross,* 111 W.Va. 465, 163 S.E. 2 (1932);

*Lewis v. Blankenship,* 75 W.Va. 598, 84 S.E. 500 (1915); *Farmer's Bank v. Gettinger,* 4 W.Va. 305 (1870).

of the results of the breathalyzer test smacks of surprise and must be deemed to constitute waiver of the error on appeal to the circuit court.[4] Accordingly, we find no ground for reversal of the Commissioner's order as a result of the admission of this evidence.

In summary, we conclude that the circuit court had no authority, pursuant to W.Va. Code § 29A–5–4, to reverse and vacate the Commissioner's license suspension order. Consequently, we reverse the order of the Circuit Court of Kanawha County, and remand the case for entry of a proper order affirming the Commissioner's decision.

Reversed and remanded.

---

**4.** Our resolution of this issue is reinforced by the fact that the 1983 amendments to Chapter 17C expressly authorize the Commissioner to promulgate rules requiring a person who requests a license suspension hearing to notify the Commissioner in writing in advance of the hearing of his intent to challenge the results of a sobriety test. The Legislature further provided that "[s]uch rule may provide that when there is a failure to comply with the notice requirement, the results of the secondary test, if any, shall be admissible as though the person and the Commissioner had stipulated the admissibility of such evidence." W.Va.Code § 17C–5A–2(d) (1983 Cum.Supp.).